**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 11, 2014[*]
Decided December 12, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-1851

| | |
|---|---|
| XI YAN ZHOU, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A089 855 768 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Xi Yan Zhou, a 55-year-old Chinese citizen, petitions for review of the denial of his application for asylum and withholding of removal—based on his opposition to China's one-child policy as well as his practice of Falun Gong—and for relief under the Convention Against Torture. We dismiss the petition with respect to his asylum claim and deny the petition with respect to his request for withholding of removal and CAT protection.

---

[*] We granted the petitioner's unopposed motion to waive oral argument. Thus the petition is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

Zhou traveled to the United States on a visitor's visa in 1998 and overstayed. Ten years later, in 2008, he was apprehended when the Department of Homeland Security raided a Chinese restaurant in Beloit, Wisconsin. Removal proceedings were initiated, and Zhou applied for asylum, withholding of removal, and CAT relief.

One significant document that Zhou submitted with his application was a written statement in which he described several altercations with Chinese authorities over a 13-year period. First, in 1985, after his wife gave birth to twin girls, government officials in Shenyang threatened her with forced sterilization, so she fled and never returned. Two years later Zhou was fired from his job, and his subsequent attempt to complain to an "upper government office" led to a scuffle with police in which he seriously cut his arm on a shard of broken glass and had to be hospitalized for emergency care. A follow-up visit seeking remuneration from the government led to another incident in which he was accused of making a scene, detained for 24 hours, and threatened with imprisonment. And in 1998, while practicing Falun Gong in a park, Zhou was "beat[en] and pushed" by police officers, who took him to a police station and demanded that he name the leader of his Falun Gong group. He stated that officers "punched and kicked" him, handcuffed him to a radiator, pulled his hair, slammed his head into a wall, and deprived him of sleep. Zhou was detained for "several" days before his father bribed an official to secure his release. His father also borrowed money to help him escape from China.

At his hearing before an immigration judge, Zhou elaborated on these incidents. He testified, for example, that he was hospitalized for approximately 90 days after his arm injury, that he began practicing Falun Gong as early as 1987 (ten years earlier than the date he used in his written statement), that his father secured his release from authorities in 1998 by posting bond rather than paying a bribe, that his father financed his travel to the United States with his "very high income," and that he falsely told United States consular officials in China that he needed a visa to travel to the United States for business purposes.

The IJ denied all relief. She concluded that Zhou did not qualify for asylum because he neither filed his application within one year of arriving in the United States, *see* 8 U.S.C. § 1158(a)(2)(B), nor showed that changed circumstances excused his delay, *see id.* § 1158(a)(2)(D). The IJ noted that the circumstances for Falun Gong practitioners in 1998 were by Zhou's own admission already "very serious," he had not shown that conditions had deteriorated over the intervening 11 years, and, in any event, he had not explained how filing in 2009 could be considered a "reasonable period after the change

in circumstances," *see* 8 C.F.R. § 1208.4(a)(4)(ii). The IJ also determined that Zhou did not qualify for withholding of removal, largely because he was not a credible witness. The IJ identified significant discrepancies between his oral testimony and written statement: the absence in his written statement of any mention of a 90-day hospitalization, the 10-year discrepancy in the date that he purported to begin practicing Falun Gong, the contradictory statements regarding whether his father paid a bribe or bond to secure his release after his arrest, and whether his father borrowed money to help him flee to the United States. The IJ also explained that Zhou's misrepresentations to U.S. consular officials in obtaining a visa were another consideration in assessing his credibility. The IJ added that Zhou supplied "little" persuasive evidence to corroborate his claims and, finally, that his "incredible and unsubstantiated" testimony doomed his request for CAT relief.

The Board of Immigration Appeals upheld the IJ's ruling.

In his petition for review, Zhou first tries to revive his untimely asylum claim by arguing that a crackdown launched against Falun Gong practitioners in 1999 represents a changed circumstance that materially affected his eligibility for asylum. *See* 8 U.S.C. § 1158(a)(2)(D). But we lack jurisdiction to review either the determination that Zhou's asylum application was untimely or the factual determination that the untimely filing was not justified by changed circumstances. *See* 8 U.S.C. § 1158(a)(3); *Yang v. Holder*, 760 F.3d 660, 664–65 (7th Cir. 2014).

Zhou next challenges the denial of his request for withholding of removal and maintains that any discrepancies in his written and oral statements are immaterial or explained by the open-ended format of the hearing in which he had more time and opportunity to explain himself. But substantial evidence supports the adverse-credibility finding. Zhou's oral testimony includes additional details about his two altercations with government officials—for instance, his 90-day hospitalization for his arm injury—that the IJ might reasonably regard as an attempt to embellish the basis for his withholding claim. *See Hassan v. Holder*, 571 F.3d 631, 638–39 (7th Cir. 2009); *Mitondo v. Mukasey*, 523 F.3d 784, 789 (7th Cir. 2008). In addition, it was also reasonable for the IJ to "expect consistency" regarding the date that Zhou purported to have begun practicing Falun Gong, and to determine that this ten-year discrepancy called into question his veracity. *See Krishnapillai v. Holder*, 563 F.3d 606, 617 (7th Cir. 2009) (three-month difference in date given in separate statements was materially inconsistent).

Zhou also challenges the determination that he should have corroborated his claims with additional evidence and urges that the sort of documents that the IJ expected him to submit—his daughters' birth certificates or medical documents related to his 90-day hospital stay—were not reasonably available to him given the urgent circumstances of his departure from China. But in this post-REAL ID Act case, the IJ acted within her broad discretion to require corroboration. *See Krishnapillai*, 563 F.3d at 618; *Rapheal v. Mukasey*, 533 F.3d 521, 527 (7th Cir. 2008). Zhou did not suggest why he was unable to provide his daughters' birth certificates, given that these same daughters were able to send him a copy of *his* birth certificate. And although Zhou may not have been able to obtain medical documents from his 1987 hospital stay in China, he says nothing to challenge the IJ's determination that he might have visited a doctor in the United States to confirm the claimed permanent injury to his arm.

Finally Zhou challenges the denial of CAT relief. But substantial evidence supports the IJ's adverse-credibility finding, and Zhou's request for CAT protection is based on the same discredited testimony as his request for withholding. *See Krishnapillai*, 563 F.3d at 621; *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 925 (7th Cir. 2005).

Accordingly we DISMISS the Petition for Review with respect to Zhou's asylum application and otherwise DENY the Petition.